IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CASCADIA WILDLANDS, THE CENTER FOR BIOLOGICAL DIVERSITY, and AUDUBON SOCIETY OF PORTLAND,

Plaintiffs,

v.

SCOTT TIMBER CO. and ROSEBURG FOREST PRODUCTS CO.,

Defendants.

Case No. 6:16-cv-01710-AA
OPINION AND ORDER

AIKEN, Judge:

Plaintiff environmental organizations bring this action pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, against defendant logging companies. Plaintiffs seek to temporarily enjoin implementation of defendants' Benson Snake logging project. Plaintiffs allege the Benson Snake logging project would destroy forty-nine acres of old-growth and mature forest

habitat occupied by marbled murrelets, a threatened species under the ESA. Specifically, plaintiffs argue that logging in occupied marbled murrelet habitat constitutes an unauthorized "take" of the marbled murrelet by harming and harassing the species in violation of Section 9 of the ESA. In response, defendants assert plaintiffs did not comply with notice requirements, lack standing, are unlikely to succeed on the merits, and have not demonstrated irreparable harm will result in the absence of an injunction. They also contend that an injunction is not in the public interest. For the reasons set forth below, plaintiffs' motion for a preliminary injunction is granted.

## BACKGROUND

In 2013, the Oregon State Land Board offered three tracts of the Elliott State Forest for sale. Defs.' Resp. 4 (doc. 18). Before defendants bid on the land, plaintiffs sent a letter indicating the tracts were occupied by marbled murrelets, a threatened species under the ESA. Plaintiffs stated they intended to sue under the ESA if defendants logged the tracts. Folk. Decl. Ex. 106. Defendant Scott Timber Co. then purchased two of the tracts. Defs.' Resp. 5. Once the sales closed, plaintiffs sent another letter to defendants indicating that if defendants began logging the tracts, plaintiffs would commence a citizen suit under the ESA. Folk Decl. Ex. 108.

In anticipation of plaintiffs' citizen suit, defendants hired a consulting firm, Western Ecosystems Technology, Inc. ("WEST"), to conduct a study regarding marbled murrelet presence within the tracts purchased by defendants. Defs.' Resp. 9. Dr. Steven P. Courtney, a PhD scientist with extensive experience researching marbled murrelets and a variety of other sensitive species, led the study team. The WEST study determined defendants could clear cut the Benson Snake area within the Benson Ridge parcel without harming marbled murrelets. That determination rested on the finding that the habitat within the Benson Ridge parcel was not used for nesting by marbled

murrelets in 2015 and 2016. Thompson Decl. ¶¶ 16, 20-21.

In contrast, plaintiffs allege the Benson Snake parcel is occupied by marbled murrelets. Pls.' Mot. for Prelim. Inj. 4 (doc. 2). In May 2014, plaintiffs conducted a survey of the area using the Pacific Seabird Group's "Methods for Surveying Marbled Murrelets in Forests: A Revised Protocol for Land Management and Research." ("PSG Protocol"). Pls.' Mot. for Prelim. Inj. 11. That survey yielded observation of a single pair of marbled murrelets flying across the Benson Ridge parcel at 0.8 canopy height. Ex. 109; McMahon Decl. ¶¶ 9-11. According to the PSG Protocol, a site is occupied by marbled murrelets where the seabirds have been observed exhibiting subcanopy behaviors, which "occur at or below the forest canopy and that strongly indicate that the site has some importance for breeding." Pls.' Mot. For Prelim. Inj. 4 (quotation marks omitted). Under the PSG Protocol, if even one occupancy behavior is detected within a block of contiguous habitat, the entire contiguous stand is classified as occupied. *Id.* at 4.

Relying on the results of their survey, plaintiffs filed this lawsuit alleging defendants will violate Section 9 of the ESA if they harvest timber on the Benson Ridge parcel. Plaintiffs now seek a preliminary injunction to halt the logging of the Benson Snake project until the merits of the case can be decided. Defendants ask this Court to deny plaintiffs' motion for a preliminary injunction.

## ANALYSIS

### I. *Notice*

Defendants first argue this court lacks jurisdiction to issue a preliminary injunction because plaintiffs failed to provide the pre-suit notice required by statute. Defendants assert plaintiffs did not provide valid notice under the ESA because they contacted defendants in 2014, at which time "the Benson Snake project had not been planned, much less initiated." Defs.' Resp. 20. Plaintiffs argue

that a party may provide anticipatory notice of an ESA violation because the fundamental purpose of Section 9 is to prevent harm to listed species before it occurs. Pls.' Reply 3 (doc. 21).

The ESA requires plaintiffs to provide written notice of any violations at least sixty days prior to the commencement of a lawsuit. 16 U.S.C. § 1540(g)(2)(A)(i). Notice is a jurisdictional requirement. *Conservation Cong. v. Finley*, 774 F.3d 611, 617 (9th Cir. 2014). When providing notice of a citizen suit, the plaintiff "is not required to list every specific aspect or detail of every alleged violation. Nor is the citizen required to describe every ramification of a violation." *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 951 (9th Cir. 2002). Instead, the analysis turns on the overall sufficiency of the notice. *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 651 (9th Cir. 2015); *see also Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1073 (9th Cir. 1996) (examining "the letter as a whole" for notice sufficiency). The question is whether the notice provided sufficient information to allow the defendant to detect and address the alleged violation, bearing in mind the defendant's greater access to information about its own activities. *Klamath-Siskiyou Wildlands Ctr.*, 797 F.3d at 651. "A reviewing court may examine both the notice itself and the behavior of its recipients to determine whether they understood or reasonably should have understood the alleged violations." *Id.*

Analyzing the overall sufficiency of plaintiffs' letter, notice was valid. Defendants received notice sixty days prior to the commencement of this case. Though the notice arrived before the specific harvest plan for the Benson Snake Unit was developed, defendants, as logging companies, purchased the Benson Ridge for timber harvest. Plaintiffs understood this and gave notice to defendants that they would pursue action against any timber harvests in the parcel because marbled murrelets allegedly breed in the parcel. Since defendants are private logging companies, plaintiffs

could not know precisely when the Benson Snake logging project was developed. Because defendants were fairly put on notice of plaintiffs' intent to sue, it does not matter that they were unable to describe the logging project in detail in their notice letter. *See Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 506-07 (9th Cir. 2013) (holding notice was sufficient under the ESA when the letter provided a non-exhaustive list of example violations).

Defendants' behavior after receiving the letter also makes clear they had the opportunity to identify and abate violations. In fact, defendants explain Scott Timber commissioned the WEST study "[i]n anticipation of litigation . . . to investigate [p]laintiffs' allegations pertaining to possible marbled murrelet use of the tract." Defs.' Resp. 6. In other words, in response to the letter, defendants tried to prevent or combat future litigation regarding take of the marbled murrelet. Thus, plaintiffs' 2014 notice letter is sufficient and valid.

II. *Standing*

Defendants next argue plaintiffs lack standing. Defs.' Resp. 22. "A threshold question in every federal case is . . . whether at least one plaintiff has standing." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (citation and quotation marks omitted). To establish Article III standing, plaintiffs must show (1) an injury in fact, which is an injury that is concrete and particularized, and actual or imminent; (2) a causal connection between the injury and the conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

A. *Injury-In-Fact*

An injury-in-fact must be concrete, particularized, and actual or imminent. Plaintiffs argue that defendants' logging project will injure plaintiffs' ability to view marbled murrelets as well as

hinder their recreation in and enjoyment of the Elliott State Forest. These concrete aesthetic and recreational injuries are cognizable in federal court. *See Sierra Club v. Morton*, 405 U.S. 727, 734 (1972) ("[A]esthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society."); *See also Nat'l Audubon Soc'y v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002) ("We hold that Audubon alleged sufficient injury to the aesthetic, recreational, and scientific interests of its members in the observation of birds and other wildlife to satisfy the injury-in-fact requirement.").

Defendants contend plaintiffs will not suffer a concrete injury as a result of the logging because the public lost legal access to the Benson Ridge Tract when Scott Timber purchased it. However, plaintiffs still view and enjoy the Benson Ridge parcel from the public 4000 Road as well as from nearby public lands. Pls.' Reply 11. As plaintiffs correctly assert, their "interest in observing the forest and wildlife on private land, from a publically accessible vantage point, is sufficient to confer standing." *Id.*; *see also Cantrell v. City of Long Beach*, 241 F.3d 674, 681 (9th Cir. 2001) ("[W]e have never required a plaintiff to show that he has a right of access to the site on which the challenged activity is occurring, or that he has an absolute right to enjoy the aesthetic or recreational activities that form the basis of his concrete interest. If an area can be observed and enjoyed from adjacent land, plaintiffs need not physically enter the affected area to establish an injury in fact.").

Plaintiffs' injuries are also particularized. For an injury to be particularized, "it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Francis Eartherington, Board Member of plaintiff Cascadia Wildlands, explained that "[t]he Elliott State Forest and surrounding areas are very special to me . . . . Logging cuts up the forest and eliminates continuous forest stands in the surrounding Elliott State Forest, which are one of that

forest's greatest qualities. Without these continuous forest areas, I am concerned that my ability to hear or attempt to see marbled murrelets in Benson Ridge parcel and the surrounding Elliott State Forest will be greatly reduced, which will diminish my enjoyment of the forest." Eatherington Decl. 8-9. Plaintiffs adequately allege that defendants' logging project would injure Eatherington and other declarants in a personal way, satisfying the particularized injury requirement for standing.

Finally, plaintiffs' injuries are imminent, not "conjectural or hypothetical." *Lujan*, 504 U. S. at 560. To assess imminence, courts focus on the likelihood the harm will occur. Members of plaintiff organizations have concrete plans to continue using the Benson Ridge parcel for recreational and aesthetic reasons, meaning their injuries will occur as imminently as their next visit. One declarant reports that he

> [P]lans to go to the Elliott State Forest and drive by the Benson Ridge parcel in the next six months . . . . The loss of old-growth and mature forest areas in Oregon's coast range also causes me irreparable harm because there is so little of this habitat remaining in these forests and so few places for me to go to visit in order to attempt to see or hear murrelets.

Greenwald Decl. 16. While the Supreme Court articulated that "'some day' intentions — without any description of concrete plans, or indeed even any specification of when the some day will be — do not support a finding of the 'actual or imminent' injury required," *Lujan*, 504 U.S. at 564, plaintiffs here adequately allege concrete plans to return to the Benson Ridge parcel. *See Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000) ("Repeated recreational use itself, accompanied by a credible allegation of desired future use, can be sufficient, even if relatively infrequent, to demonstrate that environmental degradation of the area is injurious to that person.").

B. *Causal Connection and Redressability*

While defendants do not argue that plaintiffs failed to adequately allege causation or

redressability, courts have an independent duty to ensure jurisdiction exits. *United States v. Ewing*, 638 F.3d 1226, 1230 (9th Cir.2011) (Article III standing is jurisdictional). At this stage of the proceedings, plaintiffs' allegations satisfy the second and third prongs of the standing inquiry. Plaintiffs' aesthetic and recreational injuries are connected to the harvest of the Benson Ridge parcel because if defendants do not harvest the Benson Ridge parcel, plaintiffs' injuries would not occur.

A favorable decision here also would redress plaintiffs' injuries. Plaintiffs allege recreational and aesthetic injury resulting from the proposed Benson Snake logging project. An injunction barring logging of the parcel would redress those injuries by leaving the mature and old growth forest standing and ensuring that the marbled murrelet population does not diminish in the Benson Ridge parcel due to logging of the Benson Snake Unit. Having found plaintiffs have standing, I now examine their request for a preliminary injunction.

III. *Preliminary Injunction*

Plaintiffs ask this Court to enjoin logging in the Benson Snake parcel until this case is decided on the merits. Defendants argue plaintiffs failed to meet the standard for a preliminary injunction. A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). The parties disagree on the correct formulation of the preliminary injunction standard after *Winter*. For clarity, I review the Ninth Circuit's preliminary injunction caselaw.

In the past, the Ninth Circuit articulated two standards for granting preliminary injunctions, described as "traditional" and "alternative." *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987) (quoting *Am. Motocyclist Ass'n v. Watt*, 714 F.2d 962, 965 (9th Cir. 1983)). Under the traditional standard, a plaintiff seeking a preliminary injunction must establish a likelihood of success on the

merits, a likelihood the plaintiff will suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in the plaintiff's favor, and that the injunction is in the public interest. *Id.* Under the alternative standard, a party's preliminary injunction burden operates on a sliding scale, permitting a plaintiff to show: "either (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) serious questions going to the merits and a balance of hardships strongly favoring [the moving party]." *Paramount Land Co. LP v. Cal. Pistachio Comm'n*, 491 F.3d 1003, 1008 (9th Cir. 2007).

In *Winter*, the Supreme Court rejected the first sliding scale formulation of the Ninth Circuit's alternative standard. The Ninth Circuit had affirmed a district court's issuance of an injunction based on a finding of a strong likelihood of success on the merits coupled with the "possibility" of irreparable harm, invoking the first sliding scale test under the alternative standard. *Natural Res. Def. Council, Inc. v. Winter*, 518 F.3d 658, 696-97 (9th Cir. 2008). The Supreme Court reversed, holding that "the Ninth Circuit's 'possibility' standard is too lenient." *Winter*, 555 U.S. at 21. The Court articulated a standard for injunctive relief that was consistent with the Ninth Circuit's traditional standard. *Id.* In her dissent, Justice Ginsburg explained that the Court had not rejected every version of a "sliding scale" for injunctive relief, only the first sliding scale test under the alternative standard. *Id.* at 52 (Ginsburg, J., dissenting).

The question remained whether the second sliding scale test, that of serious questions going to the merits and a balance of hardships favoring the moving party, survived *Winter*. The Ninth Circuit addressed this question in *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). Much like the present case, the plaintiffs in *Alliance for the Wild Rockies* were various environmental advocacy groups that moved for a preliminary injunction blocking certain logging

projects. The district court denied the injunction, relying on *Winter*. On appeal, the Ninth Circuit reversed and ordered the district court to enter the injunction. After deciding that irreparable harm was likely, the Ninth Circuit concluded that the "serious questions" sliding scale test survived *Winter*. *Alliance for the Wild Rockies*, 632 F.3d at 1134 ("For the reasons identified by our sister circuits and our district courts, we join the Seventh and the Second Circuits in concluding that the 'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*."). Thus, in the Ninth Circuit, a preliminary injunction is warranted where the plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor, provided the other *Winter* elements of the test for injunctive relief are met (likelihood of irreparable injury and that the injunction is in the public interest). *See id.* at 1135.

A. *Serious Questions Going to the Merits*

Plaintiffs seek a preliminary injunction under Section 9 of the ESA. Section 9 of the ESA prohibits the taking of an endangered or threatened species. 16 U.S.C. § 1538(a)(1)(B). The ESA defines "take" to include "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). "Harass" is further defined as "an intentional or negligent act . . . which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering." 50 C.F.R. § 17.3; *See also Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1068 (9th Cir. 1996). A take may involve a past or current injury, or the prospect of an imminent threat of harm to a protected species. *Forest Conserv. Council v. Rosboro Lumber Co.*, 50 F.3d 781, 784 (9th Cir. 1995).

Defendants plan to clear-cut forty-nine acres of a 355-acre parcel that plaintiffs claim is suitable habitat occupied by marbled murrelets. Pls.' Mot. for Prelim. Inj. 18 (doc. 2). If plaintiffs are correct that the site of the project is occupied, take of the threatened species is likely since "take" means "to harm," and harm includes "significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3. Clear-cut harvesting of forty-nine contiguous acres used by a threatened species qualifies as "significant habitat degradation or modification," because it would destroy the habitability of the entire Benson Snake Unit for marbled murrelet breeding. *Id.* Therefore, if occupied, the harvest would "take" marbled murrelets through harm. Defendants' project may also "take" marbled murrelets by directly killing or injuring a member of the species during the actual logging activity.

However, if defendants are correct that marbled murrelets do not occupy the Benson Ridge parcel, no take would occur and plaintiffs' claims would fail. Therefore, I must determine whether plaintiffs have shown serious questions going to the merits as to whether the Benson Ridge parcel is occupied by marbled murrelets.

Relying on the PSG Protocol, plaintiffs conclude the proposed project site is occupied by marbled murrelets. Defendants question the scientific basis for that conclusion. They contend plaintiffs' use of the PSG Protocol for detecting occupied marbled murrelet sites was inappropriate. Defendants argue that although the study design of the PSG Protocol provides "a reasonable approach for designing and carrying out audio-visual surveys of marbled murrelets, [its] guidelines and recommendations for interpreting survey data is not based on the latest and best available science[.]" Defs.' Resp. 28. Defendants aver the WEST study, by contrast, is based on the latest and

best available science. This argument has merit. The PSG Protocol has not been revised for thirteen years, during which time significant published research has developed regarding interpretation of survey data and marbled murrelets. Courtney Decl. 12-16. Plaintiffs acknowledge that the PSG Protocol has not been revised since 2003 and that it is currently under revision based on review of that research. Pls.' Reply 20.

Plaintiffs counter that the PSG Protocol methods they utilized to determine the Benson Ridge parcel was occupied are well-established and widely accepted within the scientific community. Pls.' Reply 20. They argue that at this stage, such a well-established methodology should not be jettisoned in favor of an untested new methodology, no matter how well-qualified defendants' expert[1] is. This argument has merit as well. Since both plaintiffs and defendants make compelling arguments, the issue here, as with many environmental cases, boils down to which scientific approach is best.

At this point, it is unnecessary to determine whose scientific methodology is best. I must determine whether there are serious questions that go to the merits. For the purposes of injunctive relief, "serious questions refers to questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo." *Rep. of Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988). That standard is easily satisfied here. Both parties' occupancy conclusions rest on plausible scientific backed by qualified experts. Because serious questions exist as to the merits of this case, this first factor favors a preliminary injunction.

---

[1]Like defendants, plaintiffs offer a scientific expert opinion, that of Dr. Richard Golightly. Dr. Golightly is a Professor Emeritus in the Department of Wildlife at Humboldt State University and an expert on seabirds including marbled murrelets. Golightly Decl. 1 (doc. 21-1).

B. *Likelihood of Irreparable Harm*

Plaintiffs must show a likelihood of irreparable harm absent a preliminary injunction. In order to obtain a preliminary injunction, a plaintiff must establish irreparable harm is likely, not just possible. *Winter*, 555 U.S. at 7. Here plaintiffs assert the "unauthorized taking of marbled murrelets . . . is clearly irreparable." Pls.' Mot. for Prelim. Inj. 19. Plaintiffs explain they enjoy watching the threatened seabirds in the Elliott State Forest, and that logging of the Benson Snake parcel will lessen their enjoyment. *Id.* If marbled murrelets occupy the Benson Ridge parcel, that harm would be irreparable. *See Se. Alaska Conserv. Council v. U.S. Army Corps of Engrs.*, 472 F.3d 1097, 1100 (9th Cir. 2006) ("Ongoing harm to the environment constitutes irreparable harm warranting an injunction."). If marbled murrelets do not occupy the parcel, there is no likelihood of irreparable harm. Here, the likelihood of irreparable injury — like the likelihood of success on the merits — depends on which scientific method to follow in determining occupancy. The first and second preliminary injunction factors are inextricably intertwined. Since these two factors are bound together, plaintiffs have provided sufficient showing of likely irreparable harm by showing that serious questions exist as to the merits. *Cf. Seaton v. Wiener*, 22 F. Supp. 3d 945, 951 (D. Minn. 2014) ("[T]he irreparable harm factor generally weighs in the movant's favor in First Amendment cases, although it is often intertwined with a court's evaluation of the likelihood of success on the merits."); *Deltek, Inc. v. Iuvo Sys., Inc.*, 2009 WL 1073196, *6 (E.D. Va. 2009) (finding a sufficient showing on the first and second *Winter* factors where the determination of irreparable harm is "bound up" with an inquiry into the likelihood that the plaintiff will prevail on the merits of trademark infringement and unfair competition claims); *Times-News Pub. Co. v. City of Burlington*, 2008 WL 2622995, *3 (M.D.N.C. Jun. 30, 2008) (same in First Amendment case).

Defendants also argue plaintiffs have not demonstrated likely irreparable harm because they have not shown the timber harvest will harm marbled murrelets at the population level. They maintain that "[w]here a plaintiff's interest in a species relates primarily to the species as a whole (as opposed to specific animals) courts have consistently held that the likelihood of irreparable harm must be measured at the species level," and contend plaintiffs "have not demonstrated an interest in specific members of the marbled murrelet species." Defs.' Resp. 31-32. Defendants are misguided. Plaintiffs have in fact alleged an interest in specific members of the marbled murrelet species. Plaintiffs may care about the species as a whole, but in this suit they assert an interest in the marbled murrelets that occupy the Benson Ridge parcel, and specifically an interest in observing marbled murrelets in that parcel. They cannot observe marbled murrelets in the Benson Ridge parcel if it is clear-cut. Since irreparable harm is bound up in the serious questions to the merits inquiry, and since plaintiffs demonstrated an interest in the pair of marbled murrelets allegedly seen flying over the Benson Ridge canopy, plaintiffs established likely irreparable harm, favoring a preliminary injunction.

C. *Balance of Hardships*

Plaintiffs next must show that the balance of hardships tips sharply in their favor. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839-40 (9th Cir. 2001). In cases brought under the ESA, the balance of hardships automatically tips in favor of the endangered species. *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978) ("Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities[.]"). The Ninth Circuit recognizes this removal of traditional equitable discretion in ESA proceedings. *Cottonwood Envtl. Law Ctr. v. United States Forest Serv.*, 789 F.3d

1075, 1091 (9th Cir. 2015) ("First, our opinion does nothing to disturb the Supreme Court's holding . . . that when evaluating a request for injunctive relief to remedy an ESA procedural violation, the equities and public interest factors always tip in favor of the protected species.").[2]

However, a plaintiff cannot merely "state that the balance of the hardships and the public interest falls in its favor." *Alliance for the Wild Rockies v. Kruger*, 35 F. Supp. 3d 1259, 1267 (D. Mont. 2014). Though undoubtedly in many cases the plaintiff's and species' interests align, courts often conflate those interests without discussion. Such results are not always defensible. *Id.* at 1266 (where the protected species, not the plaintiffs, was best served by the absence of an injunction, the balance of hardships and public interest tipped in favor of the defendants). Threatened species are the beneficiaries of a preliminary injunction under the ESA. Therefore a plaintiff must provide the court some basis on which it can conclude that an injunction would benefit the protected species *and* the plaintiffs by aligning hardships. *Id.* at 1267.

Here the hardships of plaintiffs and marbled murrelets align. If the project proceeds, marbled murrelets will not be able to nest in the clear-cut parcel for nearly a century while the forest regrows. Pls.' Mot. for Prelim. Inj. 23. Similarly, if the project proceeds, plaintiffs will not be able to enjoy the mature and old growth forest habitat of the marbled murrelets in the Benson Ridge parcel. Plaintiffs' ability to enjoy observing and listening to the marbled murrelet within the Elliott State Forest may diminish. Thus, plaintiffs' and the threatened species' hardships align and the balance of the hardships tips toward plaintiffs, favoring a preliminary injunction.

---

[2]In *Cottonwood*, the Ninth Circuit reaffirmed that the balance of hardships and public interest factors always favor an injunction in procedural Section 7 ESA cases. It follows that the same treatment applies to a substantive Section 9 ESA violation.

D. *Public Interest*

Like the balance of hardships, the public interest factor always weighs in the species' favor. *Cottonwood* 789 F.3d at 1091. Defendants argue that granting an injunction would disadvantage protected species by discouraging private parties from investing in the "study, protection and conservation of threatened and endangered wildlife species," as defendants did with the WEST study. Defs.' Resp. 34 (doc. 18).

Defendants' argument rests on the assumption that the WEST study, not the PSG Protocol, leads to the correct conclusion in this case. The fourth *Winter* factor, like the second, collapses into the success on the merits inquiry. Accordingly, this favor also weighs in favor of preserving the status quo.

IV. *Bond*

No bond shall be required. In public interest environmental cases, the plaintiff need not post bonds because of the potential chilling effect on litigation to protect the environment and the public interest. Federal courts have consistently waived the bond requirement in public interest environmental litigation, or required only a nominal bond. *See People of State of Cal. ex rel. Van de Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319 (9th Cir. 1985); *Landwatch v. Connaughton*, 905 F. Supp. 2d 1192, 1198 (D. Or. 2012).

**CONCLUSION**

Plaintiffs' motion for a preliminary injunction (doc. 2) is GRANTED. Pursuant to Federal Rule of Civil Procedure 65, the Court hereby enjoins defendants from engaging in any further activities on the Benson Ridge parcel in furtherance of the Benson Snake or Little Benson project. The preliminary injunction will remain in place until the Court has ruled on any future dispositive

motions in this case, or until the matter is otherwise resolved. No bond is required.

IT IS SO ORDERED.

Dated this 19th day of December 2016.

Ann Aiken
United States District Judge