IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CASCADIA WILDLANDS, THE CENTER FOR BIOLOGICAL DIVERSITY, and AUDUBON SOCIETY OF PORTLAND, | Case No. 6:16-cv-01710-AA<br>**OPINION AND ORDER** |
| Plaintiffs, | |
| v. | |
| SCOTT TIMBER CO., ROSEBURG RESOURCES CO., and RLC INDUSTRIES CO., | |
| Defendants. | |

AIKEN, Judge:

In this Endangered Species Act ("ESA") citizen suit, plaintiff environmental organizations seek to permanently enjoin defendant logging companies from logging a forty-nine-acre section of the Elliott State Forest known as the Benson Snake Parcel. Plaintiffs allege that the Benson Snake Parcel is occupied habitat of marbled murrelets, sea birds that are listed as threatened species under the ESA. Plaintiffs further contend that logging the Benson Snake Parcel will result in "take" of the marbled murrelet, in violation of Section 9 of the ESA.

Page 1 – OPINION AND ORDER

Defendants moved to dismiss the lawsuit for lack of jurisdiction, on the ground that plaintiffs failed to provide statutorily adequate pre-suit notice.

## BACKGROUND

This case concerns the effect of logging on marbled murrelets, "small sea bird[s]" that "spend most of their time at sea feeding on fish, but nest and engage in courtship behaviors and breeding inland in contiguous mature and old-growth forests." First Am. Compl. ¶ 39. Since 1992, marbled murrelets in Washington, Oregon, and California have been listed as "threatened" under the ESA. *Id.* ¶ 49. Plaintiffs—Cascadia Wildlands, the Center for Biological Diversity, and Audubon Society of Portland—allege that "[t]he primary reason marbled murrelets are listed as a threatened species is the loss of older coastal forests that provide marbled murrelet nesting and breeding habitat." *Id.* ¶ 50. They further allege that "[t]he primary cause of forest loss and resulting marbled murrelet population declines is commercial timber harvest and related wind throw or blow down of trees, fire, and other natural events." *Id.*

On May 31, 2012, plaintiffs sued Governor John Kitzhaber and other state defendants under the ESA, seeking "to enjoin State-authorized logging activities and forest management decisions that are causing the 'take' of threatened marbled murrelets . . . in violation of Section 9 of the Act." Complaint for Declaratory & Injunctive Relief at 1, *Cascadia Wildlands v. Kitzhaber*, No. 3:12-cv-00961-AA (D. Or. May 31, 2012) (dismissed Feb. 18, 2014). I presided over that case, in which several logging companies, including defendant Scott Timber Company ("Scott Timber"), obtained defendant-intervenor status. In November 2012, I granted plaintiffs' motion for a preliminary injunction, enjoining eleven specific timber sales and other logging activities on certain state-owned lands in the Tillamook, Clatsop, and Elliot State Forests. *Cascadia Wildlands v. Kitzhaber*, 2012 WL 5914255, *2 (D. Or. Nov. 19, 2012). After the

injunction was entered, the state defendants cancelled all pending and proposed logging operations in occupied murrelet sites in those forests. In February 2014, the case settled and I granted the parties' joint stipulated motion to dismiss.

In January 2014, just before I dismissed the *Kitzhaber* case, the State of Oregon announced a plan to auction off several tracts of the land at issue in the *Kitzhaber* lawsuit, including a 355-acre tract of the Elliot State Forest called the Benson Ridge Parcel. The appraisal for the Benson Ridge Parcel noted that the property "ha[d] not been surveyed for murrelets" and took into account the likelihood that some or all of the property was occupied by marbled murrelets. Cady Decl. Ex. 5 at 10, 17 (doc 2-11 at 115, 122).

On March 13, plaintiffs sent a letter to Scott Timber and eighteen other logging companies. That letter was addressed to companies that had "offered or may offer a bid for the purchase of lands in the Elliott State Forest in Coos County, Oregon, including the Adams Ridge Parcels, the Benson Ridge Parcel, and/or the East Hakki Ridge Parcel." *Id.* at 2. The letter went on to state:

> You are hereby provided notice, pursuant to 16 U.S.C. § 1540(g), that logging in occupied or suitable nesting habitat for marbled murrelets in any of these parcels violates the Endangered Species Act ("ESA") and its implementing regulations, by killing, injuring, harming, harassing, and otherwise causing 'take' of threatened marbled murrelets.
>
> As you may be aware, on November 19, 2012, the Federal District Court for the District of Oregon issued an injunction against logging in occupied marbled murrelet habitat on the Elliott State Forest, including in any occupied sites on the parcels that are now for sale. As a result of that litigation, . . . the State of Oregon canceled all of its pending and future logging activities in occupied marbled murrelet habitat on the Elliott State Forest. The State of Oregon is selling these lands as a direct result of the litigation and because of the liability and encumbrances associated with the presence of marbled murrelets and other threatened and endangered species. Liability under the Endangered Species Act would apply just as forcefully to any future owner of this land, whether that owner is a state, an individual, a corporation, or any other entity.

> If you purchase any or all of these parcels, we intend to commence litigation to obtain an injunction—the very same injunction already obtained against the current owner—to prevent you from logging in suitable or occupied marbled murrelet habitat or engaging in any other practices that result in harm to or take of threatened or endangered species.

*Id.* The letter then provided two pages of background on the ESA (with citations to Ninth Circuit and District of Oregon decisions concerning marbled murrelets) and a page of information about marbled murrelets. In a section titled "NOTICE OF VIOLATION," the letter asserted:

> The Elliott State Forest is one of the few places where marbled murrelets are reliably present, and surveys have consistently shown that suitable habitat in the area is occupied by murrelets close to one hundred percent of the time. For example, the State of Oregon planned sixteen timber sales on the Elliott State Forest in 2013. After surveying for marbled murrelets, fifteen of those sales—all but one—were canceled because of marbled murrelet occupancy. Likewise, murrelet surveys have only been conducted so far in two of the five parcels being considered for sale, and significant murrelet occupancy was detected in both of those surveyed parcels. There is a significant amount of suitable marbled murrelet habitat in the three other parcels, including . . . 219 acres in the Benson Ridge Parcel . . . . Based on the suitability of habitat in these parcels, and based on the occupancy of murrelets in almost all nearby suitable habitat, there is ample evidence that marbled murrelets occupy and will continue to occupy the offered parcels[.]

*Id.* at 5–6.

The state's auction closed April 11, 2014. Scott Timber was the winning bidder for the Benson Ridge Parcel. On June 3, 2014, after learning the identities of the winning bidders, plaintiffs sent another letter ("the 2014 Notice") to Scott Timber and Seneca Sawhill Company. The 2014 Notice repeats much of the content of the March 13 letter and adds new content, including the following statement at the end of the "NOTICE OF VIOLATION" section:

> Your companies—Scott Timber and Seneca—are both logging companies. The land you own is for the purpose of creating timber and generating revenue. Kathy Jones, one of the co-owners of Seneca, has publicly stated that Seneca will clearcut the East Hakki Ridge Parcel. Therefore, your acquisition of the three parcels makes the logging of these murrelet occupied areas reasonably certain to occur.

Folk Decl. Ex. 108 at 5–6, Sept. 23, 2016 (doc. 18-2 at 19–20) (footnote omitted). Copies of both the March letter and the 2014 Notice were sent to the Secretary of the Interior and to the State Director of the Fish and Wildlife Service's Oregon office.

On June 4, 2014, the State of Oregon signed a bargain and sale deed conveying the Benson Ridge Parcel to Scott Timber. On June 9, 2014, Scott Timber responded to the 2014 Notice. In its response, Scott Timber stated that:

> Scott Timber Co. presently has no concrete plans, much less imminent plans, to conduct timber harvest operations on the Benson Ridge or Adams Ridge #1 parcels. Any future decisions relative to timber harvest operations on these parcels will be made after undertaking significant surveying and planning work, including investigation and planning related to species listed under the Endangered Species Act. Once the investigation and planning work is complete—which could take as long as two to three years—Scott Timber Co. will assess all the information available to it and make appropriate decisions relative to timber management objectives for the future. . . .
>
> As a result of these circumstances, after consulting with counsel, Scott Timber Co.'s position is that your 60-day notice does not present a ripe controversy for which a federal court would have jurisdiction.

Folk Decl. Ex. 110 at 1, Sept. 23, 2016 (doc. 18-2 at 24).

Two years passed. Then, on August 13, 2016, Roseburg Resources Company submitted a Notification of Operations/Permit to Operate Power-Driven Machinery ("NOAP") to the Oregon Department of Forestry announcing its plans to clear-cut the 49-acre Benson Snake parcel, which is located in the middle of the larger Benson Ridge Parcel. State regulations require an operator, landowner, or timber owner to submit a NOAP at least fifteen days prior to commencing a timber harvest. Or. Admin. R. 629-605-0150. Plaintiffs learned about the plans to log the Benson Snake Parcel on August 19, 2016, through the Oregon Department of Forestry's e-notification website.

On August 25, 2016, plaintiffs filed this action against Scott Timber and Roseburg Forest Products Company, asserting a single claim for violation of Section 9 of the ESA. That same day, plaintiffs moved for a preliminary injunction to prevent Scott Timber from logging the Benson Snake Parcel. Scott Timber agreed not to initiate logging on the Benson Snake Parcel pending resolution of the motion for a preliminary injunction, and I set a briefing schedule.

On October 12, 2016, the U.S. Fish and Wildlife Service Sent Scott Timber a letter indicating that it had learned of the Benson Snake harvest operation from the NOAP and offering technical assistance in determining how future forest management activities within the Benson Ridge Parcel may affect marbled murrelets.

On November 22, 2016, the parties appeared for a hearing on the motion for a preliminary injunction. In its written and oral opposition to the motion, Scott Timber argued that this Court lacked subject matter jurisdiction over plaintiffs' claim because the 2014 Notice did not constitute adequate pre-suit notice under the ESA.

On December 19, 2016, I granted plaintiffs' motion and entered a preliminary injunction. The opinion and order granting plaintiffs' motion for a preliminary injunction contained a section addressing pre-suit notice. That section stated, in full:

> Defendants first argue this court lacks jurisdiction to issue a preliminary injunction because plaintiffs failed to provide the pre-suit notice required by statute. Defendants assert plaintiffs did not provide valid notice under the ESA because they contacted defendants in 2014, at which time "the Benson Snake project had not been planned, much less initiated." Defs.' Resp. 20. Plaintiffs argue that a party may provide anticipatory notice of an ESA violation because the fundamental purpose of Section 9 is to prevent harm to listed species before it occurs, Pls.' Reply 3 (doc. 21).
>
> The ESA requires plaintiffs to provide written notice of any violations at least sixty days prior to the commencement of a lawsuit. 16 U.S.C. § 1540(g)(2)(A)(i). Notice is a jurisdictional requirement. *Conservation Cong. v. Finley*, 774 F.3d 611, 617 (9th Cir. 2014). When providing notice of a citizen suit, the plaintiff "is not required to list every specific aspect or detail of every

alleged violation. Nor is the citizen required to describe every ramification of a violation." *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 951 (9th Cir. 2002). Instead, the analysis turns on the overall sufficiency of the notice. *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 651 (9th Cir. 2015); *see also Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1073 (9th Cir. 1996) (examining "the letter as a whole" for notice sufficiency). The question is whether the notice provided sufficient information to allow the defendant to detect and address the alleged violation, bearing in mind the defendant's greater access to information about its own activities. *Klamath-Siskiyou Wildlands Ctr.*, 797 F.3d at 651. "A reviewing court may examine both the notice itself and the behavior of its recipients to determine whether they understood or reasonably should have understood the alleged violations." *Id.*

Analyzing the overall sufficiency of plaintiffs' letter, notice was valid. Defendants received notice sixty days prior to the commencement of this case. Though the notice arrived before the specific harvest plan for the Benson Snake Unit was developed, defendants, as logging companies, purchased the Benson Ridge for timber harvest. Plaintiffs understood this and gave notice to defendants that they would pursue action against any timber harvests in the parcel because marbled murrelets allegedly breed in the parcel. Since defendants are private logging companies, plaintiffs could not know precisely when the Benson Snake logging project was developed. Because defendants were fairly put on notice of plaintiffs' intent to sue, it does not matter that [plaintiffs] were unable to describe the logging project in detail in their notice letter. *See Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 506-07 (9th Cir. 2013) (holding notice was sufficient under the ESA when the letter provided a non-exhaustive list of example violations).

Defendants' behavior after receiving the letter also makes clear they had the opportunity to identify and abate violations. In fact, defendants explain Scott Timber commissioned the WEST study "[i]n anticipation of litigation . . . to investigate [p]laintiffs' allegations pertaining to possible marbled murrelet use of the tract." Defs.' Resp, 6. In other words, in response to the letter, defendants tried to prevent or combat future litigation regarding take of the marbled murrelet. Thus, plaintiffs' 2014 notice letter is sufficient and valid.

*Cascadia Wildlands v. Scott Timber Co.*, 190 F. Supp. 3d 1024, 1029–30 (D. Or. 2016).

Defendants appealed the entry of the preliminary injunction. They did not raise the notice issue on appeal. On November 16, 2017, the Ninth Circuit reversed and remanded.[1] *Cascadia Wildlands v. Scott Timber Co.*, 715 F. App'x 621, 625 (9th Cir. 2017) (unpublished).

---

[1] The court upheld my findings on three of the four prongs of the preliminary injunction test, but remanded because I had not made a finding on whether marbled murrelets likely inhabit

On February 12, 2018, plaintiffs sent a "Supplemental Notice of Intent to Sue for Violations of the Endangered Species Act" ("2018 Notice") to Scott Timber, Roseburg Forest Products, Roseburg Resources, and RLC Industries Co. Carollo Decl. Ex. 134 at 1–6, May 8, 2018 (doc. 59-1 at 77–82). That notice was "largely duplicative" of the 2014 Notice. *Id.* at 2. However, unlike the 2014 Notice, the 2018 Notice specifically referred to the Benson Snake logging project. On April 15, 2018, plaintiffs filed a First Amended Complaint naming Scott Timber, Roseburg Resources, and RLC Industries as defendants. Roseburg Forest Products was dismissed that same day.

On remand from the Ninth Circuit, the parties agreed to forego relitigating the preliminary injunction in favor of an expedited trial schedule. A bench trial is scheduled to begin August 6, 2018. Dispositive motions were due June 11, 2018. Defendants have filed two such motions. This opinion and order addresses the first, a motion to dismiss for lack of jurisdiction. Defendants' motion for summary judgment remains pending and will be taken under advisement at the end of the regular briefing schedule.

## STANDARDS

Federal Rule of Civil Procedure 12(b)(1) governs a motion to dismiss for lack of subject matter jurisdiction. A 12(b)(1) motion may attack the substance of the complaint's jurisdictional allegations and the court is not required to accept those allegations as true. *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 979–80 (9th Cir. 2007). The court may look outside the pleadings to resolve factual disputes related to jurisdiction. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009). The party seeking to invoke the court's subject matter jurisdiction has the burden to

---

the Benson Snake parcel—a determination that hinges on the evidentiary weight assigned to the testimony of the parties' competing experts. The appellate court thus could not determine whether, absent preliminary relief, there was a likelihood or merely a possibility of irreparable harm. *Cascadia Wildlands*, 715 F. App'x at 624–25.

demonstrate that jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

The ESA requires plaintiffs to give written notice to the Secretary of the Interior and to "any alleged violator" at least sixty days before filing a citizen suit. 16 U.S.C. § 1540(g)(2)(A)(i). The purpose of the notice requirement is "to put the agencies on notice of a perceived violation of the statute and an intent to sue. When given notice, the agencies have an opportunity to review their actions and take corrective measures if warranted." *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998) (quoting *Forest Conservation Council v. Espy*, 835 F. Supp. 1202, 1210 (D. Idaho 1993)). In the Ninth Circuit, "[t]his sixty-day notice requirement is jurisdictional," and a "failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit under the ESA." *Id.* (citations omitted).

## DISCUSSION

Defendants argue that the 2014 Notice did not meet the statutory requirements for pre-suit notice under the ESA.[2] Plaintiffs urge me to reject defendants' motion on the ground that my prior determination that the 2014 Notice was adequate is the law of the case. In the alternative, plaintiffs argue that defendants' motion should be denied on the merits. I begin by addressing plaintiffs' law of the case argument and then proceed to the merits.

I. *Law of the Case*

Plaintiffs argue that because I already considered—and rejected—defendants' arguments about the adequacy of the 2014 Notice, I should decline to revisit that decision pursuant to the law of the case doctrine. "As most commonly defined, the [law of the case] doctrine posits that

---

[2] The parties agree that subject matter jurisdiction here turns on the adequacy of the 2014 Notice, and that if the 2014 Notice was inadequate, the 2018 Notice cannot cure the earlier notice's deficiencies.

Page 9 – OPINION AND ORDER

when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). "The doctrine is not a limitation on a tribunal's power, but rather a guide to discretion." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

The law of the case doctrine has limited application to determinations made in issuing (or denying) a preliminary injunction. Because "haste . . . is often necessary" in deciding whether to grant a preliminary injunction, such relief "is customarily granted [or denied] on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, findings of fact and conclusions of law issued at the preliminary injunction phase generally are not binding at later stages in the proceeding. *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 631 n.5 (9th Cir. 2016).

Citing *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Department of Agriculture*, 499 F.3d 1108, 1114 (9th Cir. 2007), plaintiffs argue that the law of the case doctrine applies to "conclusions on pure issues of law" at the preliminary injunction phase. But even if the adequacy of ESA notice is a "pure issue of law"—a premise I question for the reasons set out later in this section—the law of the case doctrine never applies to questions of subject matter jurisdiction, which go to a court's authority to hear a case and cannot be waived. *United States v. Houser*, 804 F.2d 565, 569 (9th Cir. 1986) (quoting *Green v. Dep't of Commerce*, 618 F.2d 836, 839 n.9 (D.C. Cir. 1980)). As noted above, in the Ninth Circuit, pre-suit notice is jurisdictional. *Sw. Ctr. for Biological Diversity*, 143 F.3d at 520. Accordingly, the law of the case doctrine does not bar defendants' motion to dismiss.

I note that there is disagreement among the federal courts regarding whether the pre-suit notice requirements in the ESA and other environmental statutes are jurisdictional "in the strict sense of the term." *Sierra Club v. Yeutter*, 926 F.2d 429, 437 (5th Cir. 1991) (citing *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 30 (1989)); *see generally* Karl S. Coplan, *Is Citizen Suit Notice Jurisdictional and Why Does It Matter?*, 10 Widener L. Rev. 49, 54–57 (2003) (collecting cases and arguing that the Supreme Court's decision in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), "suggest[s] that notice . . . is not a jurisdictional requirement in a citizen suit"). In *Hallstrom*, the Supreme Court considered the pre-suit notice requirement of the Resource Conservation and Recovery Act, which is identical in relevant respects to the pre-suit provision of the ESA. 493 U.S. at 31. The Court held that sixty-day pre-suit notice was "mandatory" but declined to decide whether it was jurisdictional:

> The Court might be read to suggest that failure to comply with the 60-day notice provision deprives the court of subject-matter jurisdiction, thereby obligating a court to dismiss a case filed in violation of the notice provision no matter when the defendant raises the issue—indeed, regardless of whether the defendant does so. As there is no dispute in this case that respondent timely raised the claim that petitioners had not complied with the notice provision, the question whether a defendant may waive the notice requirement is not before the Court, and any "resolution" of the question is necessarily dictum. In any event, I do not understand the Court to express any view on whether the notice requirement is waivable.

*Hallstrom*, 493 U.S. at 34 n.* (Marshall, J., dissenting) (citations omitted).

In *Sierra Club*, the Fifth Circuit Court of Appeals held that pre-suit notice is "mandatory" and that district courts lack discretion to disregard absence of pre-suit notice when the issue is timely raised. 926 F.2d at 437. The court concluded, however, that the notice requirement was not jurisdictional and that a challenge to pre-suit notice could be waived. *Id.* The court analogized to Eleventh Amendment immunity, which the Supreme Court has said "partakes of the nature of jurisdictional bar" but can be waived and need not be raised *sua sponte* by the

Page 11 – OPINION AND ORDER

court. *Id.* at 436 (quoting *Patsy v. Bd. of Regents of the State of Fla.*, 457 U.S. 496, 515 n.19 (1982)). For my part, I find the reasoning of the courts who have concluded that pre-suit notice is not strictly jurisdictional quite persuasive. But I am bound to follow the precedential rulings of the Ninth Circuit, which has unequivocally held that, in this circuit, pre-suit notice is a jurisdictional requirement.

Even if pre-suit notice were not jurisdictional, however, application of law of the case would be inappropriate here for two reasons. First, *Ranchers Cattlemen*'s statement about pure questions of law concerned how a *lower* court ought to apply the preliminary-injunction-phase determinations of an *appellate* court. *See Ranchers Cattlemen*, 499 F.3d at 1114 (noting that although "the district court should abide by 'the general rule' that our decisions at the preliminary injunction phase do not constitute the law of the case[,] . . . [a]ny of our conclusions on pure issues of law . . . are binding."). That is an important point, because the reason the law of the case doctrine generally does not apply to determinations at the preliminary injunction phase is that the parties' arguments and the court's decision are generally issued in haste. On appeal, the reviewing court typically has far more time to consider its decision. That additional time does not change the rule for factual determinations, as to which the appellate court is constrained to deciding whether the district court abused its discretion or committed clear error. But the appellate court can and often will consider new arguments on pure questions of law, which the parties have by the time of the appeal had more time to develop. A trial court, by contrast, must issue both its factual *and* legal determinations quickly. So there is reason to think that *Ranchers Cattlemen*'s rule is specific to the purely legal determinations of an *appellate* court. *Cf. Hart v. Massanari*, 266 F.3d 1155, 1176–77 (9th Cir. 2001) (explaining why federal

appellate courts' published rulings are precedential, whereas federal district courts' rulings are not).

In addition, the adequacy of pre-suit notice under the ESA is not a pure question of law. It is true that the Ninth Circuit reviews determinations about the adequacy of pre-suit notice *de novo*, a standard of review generally reserved for legal rather than factual questions. *Waterkeepers N. Cal. v. AG Indus. Mfg., Inc.*, 375 F.3d 913, 917 (9th Cir. 2004). But *de novo* review also applies to some mixed questions of law and fact. *See U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 966–67 (2018) ("In short, the standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work."). The Ninth Circuit has explained that adequacy of notice turns on the content of the notice "and the behavior of its recipients[.]" *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 651 (9th. Cir. 2015). The inquiry thus involves not a pure question of law but the application of law to the evidence, which implicitly requires factual findings. *Cf. McCormack v. Herzog*, 788 F.3d 1017, 1024 (9th Cir. 2015) ("Questions of standing are also reviewed de novo, but underlying factual findings are reviewed for clear error."). When a court undertakes that sort of inquiry at the preliminary injunction stage, the law of the case doctrine does not apply.

II. *Adequacy of Notice*

Having determined that my prior determination that the pre-suit notice was adequate is not the law of the case, I now must consider *de novo* whether the 2014 Notice satisfied the requirements of the ESA. Citizen suit provisions balance the benefits of citizen enforcement against the risk of excessive lawsuits "by allow[ing] Government agencies to take responsibility for enforcing environmental regulations and giv[ing] the alleged violator an opportunity to bring

Page 13 – OPINION AND ORDER

itself into complete compliance with the Act." *Alliance for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 603 (9th Cir. 2014) (internal quotation marks omitted). When providing notice of a citizen suit, the plaintiff "is not required to list every specific aspect or detail of every alleged violation. Nor is the citizen required to describe every ramification of a violation." *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 951 (9th Cir. 2002) (quoting *Pub. Interest Research Grp. Of N.J., Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1248 (3d Cir. 1995)). Instead, the analysis turns on the overall sufficiency of the notice. *Klamath-Siskiyou Wildlands Ctr.*, 797 F.3d at 651; *see also S.F. BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1155 (9th Cir. 2002) ("[A]s long as a notice letter is reasonably specific as to the nature and time of the alleged violations, the plaintiff has fulfilled the notice requirement."); *Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1073 (9th Cir. 1996) (examining "the letter as a whole" for notice sufficiency). "A reviewing court may examine both the notice itself and the behavior of its recipients to determine whether they understood or reasonably should have understood the alleged violations." *Klamath-Siskiyou Wildlands Ctr.*, 797 F.3d at 651.

Defendants argue that the 2014 Notice is invalid because it did not provide sufficient notice of the *specific violation* challenged in this lawsuit: the proposed clear-cut of the Benson Snake Parcel. Defendants' hypertechnical approach to the pre-suit notice requirement is not supported by the statutory text or the case law. The question is whether the notice was specific enough to put both defendants and the relevant governmental agencies on notice of the particular violation being challenged—that is, should defendants have known from the content of the 2014 Notice that when it announced the Benson Snake logging project, plaintiffs would sue due to concerns about the marbled murrelet. Answering that question is a fact-specific inquiry that does not lend itself to bright-line rules. Here, I conclude based on the 2014 Notice both that a

reasonable logging company in Scott Timber's position would have understood the nature of the noticed violation and that Scott Timber in fact understood the nature of the noticed violation.

The 2014 Notice cannot be viewed in isolation; it must be considered in the context of the *Kitzhaber* case, the prior injunction, Oregon's decision to sell the land, and plaintiffs' longstanding advocacy for the marbled murrelet. Scott Timber intervened in the *Kitzhaber* lawsuit, so it knew about the injunction entered against the government defendants in that case. It also knew, based on disclosures in the appraisal, that the three tracts of land for sale at the auction were likely to be inhabited by marbled murrelets. As soon as plaintiffs knew that Scott Timber was planning to make an offer on one or more of the parcels, they wrote a letter outlining the history of the *Kitzhaber* litigation, providing legal and scientific background, and specifying that they would file a suit under the ESA if any logging activity were undertaken in murrelet-occupied portions of the tracts of land sold at the auction. When plaintiffs learned that Scott Timber was the winning bidder on the Benson Ridge parcel, they wrote again to reiterate their concerns about murrelet occupation and logging on that parcel specifically. Scott Timber is a logging company and plaintiffs reasonably (and correctly) assumed that its participation in the auction meant it planned to cut down trees in the Benson Ridge Parcel.

Of course, some descriptions would be too broad to provide meaningful notice. For example, defendants posit a hypothetical letter sent to the Bureau of Land Management in which an environmental organization asserts plans to sue to stop "any logging authorized by BLM in ESA-listed critical habitat for spotted owls or marbled murrelets[.]" Defs.' Reply in Supp. of Mot. to Dismiss 9 n.4. I agree that such a broad letter, which refers neither to specific geographic areas nor any evidence that logging is about to take place, would not satisfy the demands of the statute. But here, as explained above, the 2014 Notice—particularly when

considered in the context of the *Kitzhaber* lawsuit and related events—provided far more specific information than does defendants' hypothetical example. Any reasonable entity in Scott Timber's shoes would have understood the nature of the violation to which the 2014 Notice letter referred. *See Water Keeper Alliance v. U.S. Dep't of Def.*, 271 F.3d 21, 30 (1st Cir. 2001) ("To say that the Navy was not on notice that Water Keeper would object to the failure to prepare a biological assessment for its interim activities, when the Notice makes it clear that Water Keeper intended to challenge an ongoing delinquency in the preparation of the biological assessment, would be setting the bar for adequacy of notice too high.").

Moreover, it is clear from Scott Timber's actions that it *in fact* understood the nature of the violation; it hired an expert and commissioned a murrelet occupancy study in anticipation of litigation. Those "are not the actions of a company that has not received enough information for purposes of the statutory notice provisions of the Act." *See Atl. States Legal Found. v. Stroh Die Casting Co.*, 116 F.3d 814, 820 (7th Cir. 1997) (describing the defendant company's response to the allegedly inadequate notice, which included "secur[ing] a permit that covered exactly [the] discharges" described in the notice, "beg[inning] construction of a treatment facility," and "re-rout[ing] the very same die casting wastewater").

Defendants note that the Fish and Wildlife Service did not reach out to them to offer technical assistance until after they filed the NOAP. Defendants suggest that this is evidence that neither they nor the relevant governmental entities were on effective notice that plaintiffs intended to sue for violations of the ESA in connection with the Benson Snake logging project. Although the timing of the Fish and Wildlife Service's response is entitled to some weight, I find its value here to be low. As plaintiffs correctly point out, the Fish and Wildlife Service is not under an obligation to respond when it receives pre-suit notice; the question is whether the notice

adequately apprised the agency of the *opportunity* to take action. In view of the evidence summarized above, I find that the Fish and Wildlife Service had that opportunity.

Defendants also argue that the 2014 Notice was inadequate because it was filed too early. Specifically, they contend that the 2014 Notice was not effective because it was filed one day before Scott Timber took title to the Benson Ridge Parcel and two years before defendants submitted their NOAP. They contend that courts generally have rejected such "anticipatory" or "prospective" notices. There is a split of authority on this question. *See Colo. Envtl. Coal. v. Office of Legacy Mgmt.*, 819 F. Supp. 2d 1193, 1219–20 (D. Colo. 2011) (collecting cases). Having reviewed the relevant authorities, I conclude that neither the statute nor the case law supports a bright-line rule against anticipatory notice of future violations. "Congress' overriding purpose in enacting the ESA indicates that it intended to allow citizen suits to enjoin an imminent threat of harm to protected wildlife." *Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781, 785 (9th Cir. 1995). Legislative history indicates that Congress intended to make injunctions available in order to increase the likelihood conflicts would be resolved "*before* harm to a species occurs." *Id.* at 786 (quoting S. Rep. No. 97-418, at 24 (1982) *reprinted in* 1982 U.S.C.C.A.N. at 1411 (emphasis in *Forest Conservation Council*)). In *Colorado Environmental Coalition*, the district court considered whether a notice of intent to sue can be effective as to an act that has not yet occurred. 819 F. Supp. 2d at 1219–20. The court noted that the ESA *only* permits citizen suits for *prospective* relief, and then reasoned that "[a]llowing a legal action to be brought under the ESA that challenges future agency actions is inconsistent with a rule that pre-suit notice under the ESA cannot challenge future agency actions." *Id.* at 1220. "Instead, the determinative question . . . is whether the notice sent by Plaintiffs contained a sufficient description of the challenged activities, thus sufficiently putting DOE on notice." *Id.*

Page 17 – OPINION AND ORDER

I find the District of Colorado's analysis and conclusion persuasive and adopt them here. As explained above, the 2014 Notice, in the context of the history of litigation in between the parties in this case, provided sufficient information to put Scott Timber and the relevant governmental agencies on notice regarding the specific violation of the ESA asserted here.

Next, defendants aver that statutory context demonstrates that Congress would not consider the 2014 Notice compliant with the statute. Specifically, they cite another provision of the ESA, which provides:

> No action may be commenced under [the section governing actions to compel the Secretary to perform an act or duty under § 1533] prior to sixty days after written notice has been given to the Secretary; except that such action may be brought immediately after such notification in the case of an action under this section respecting an emergency posing a significant risk to the well-being of any species of fish or wildlife or plants.

16 U.S.C. § 1540(g)(2)(C). Defendants argue that Congress's decision not to include a parallel "emergency" exception to the pre-suit notice requirement in the ESA's citizen suit provision must be interpreted as a rejection of notice to sue for prospective violations of the law. I disagree. Nothing in the text of 16 U.S.C. § 1540(g)(2)(C) suggests that pre-suit notice under § 1540(g)(2)(A)(i) is only valid as to violations that have already occurred. Indeed, as explained above, the fact that citizen suits may seek only prospective injunctive relief strongly suggests that Congress anticipated citizen suits would block imminent violations, not merely stop in-process violations.

Defendants also cite the regulations governing the Fish and Wildlife Service's imposition of civil penalties pursuant to 16 U.S.C. § 1540(a)(1). That section provides that "[n]o penalty may be assessed under this subsection unless such person is given notice and opportunity for a hearing with respect to such violation." 16 U.S.C. § 1540(a)(1). The governing regulations require the Service to provide "notice of violation" prior to such a hearing. 50 C.F.R. § 11.11(a).

Page 18 – OPINION AND ORDER

The notice must include "(1) [a] concise statement of the facts believed to show a violation, (2) a specific reference to the provisions of the statute or regulation allegedly violated, and (3) the amount of penalty proposed to be assessed." *Id.* Defendants concede that those regulations are not directly applicable to citizen suits, but insist that the regulations—which appear to describe how to address violations that have already taken place—inform the meaning of the term "violation" in § 1540(g)(2)(A)(i). I am not persuaded. It makes sense that the Fish and Wildlife Service would have authority to assess civil penalties only after a violation has actually taken place. When the remedy sought is an injunction, which only helps when there is still harm to be averted, the standard for describing the nature of the violation is necessarily different.

Finally, defendants contend that plaintiffs have taken the public position that, with respect to logging projects in Oregon, an effective pre-suit notice can be filed only after a logging company files a NOAP announcing the project. That contention is both irrelevant and incorrect. It is irrelevant because there is no reason plaintiffs' position on the requirements of pre-suit notice in other contexts, such as administrative rulemaking, should bind them in this lawsuit; defendants have not argued that collateral estoppel, judicial estoppel, or any other doctrine prevent plaintiffs from taking a contrary position here. Moreover, defendants mischaracterize the record. It is true that, through their participation in administrative rulemaking, plaintiffs have bemoaned the *difficulty* of providing adequate pre-suit notice to enjoin logging on private lands in Oregon. *See* Carollo Decl. Ex. 131 at 19 n.1, May 8, 2018 (doc. 59-1 at 21) (stating, in a petition to initiate rulemaking, that the interaction between the ESA's pre-suit notice requirement and the State of Oregon's fifteen-day notice rule renders citizen suits against private landowners "nearly impossible to successfully prosecute"); *id.* Ex. 132 at 21 n.1 (doc. 59-1 at 56) (making the same assertion in a petition to uplist marbled

murrelets from threatened to endangered). But that is not the same as conceding that pre-suit notice compliant with the ESA *never* can be sent prior to the issuance of a NOAP. Here, as noted, special circumstances—namely, that the forests in question here were formerly public lands that were the subject of a federal lawsuit involving the same parties—have given plaintiffs access to more information than they ordinarily have with respect to private logging companies' plans. They were able to use that information to formulate a sufficiently specific pre-suit notice.

Finally, I conclude that the 2014 Notice, though served only on Scott Timber, was also effective as to Roseburg Resources and RLC Industries. RLC Industries is the parent company of Scott Timber and Roseburg Resources. For purposes of the ESA, notice on a subsidiary or one of several "interrelated companies" satisfies the pre-suit notice requirement. *Two Rivers Terminal, L.P. v. Chevron USA, Inc.*, 96 F. Supp. 2d 426, 432 (M.D. Pa. 2000); *Puget Soundkeeper Alliance v. Louis Dreyfuss Commodities LLC*, 2016 WL 7718644, *5 (W.D. Wash. Mar. 11, 2016). The 2018 Notice, though good practice, was unnecessary from a jurisdictional standpoint.

## CONCLUSION

Defendants' Motion to Dismiss for Lack of Jurisdiction (doc. 59) is DENIED.

IT IS SO ORDERED.

Dated this 5th day of July 2018.

Ann Aiken
United States District Judge